IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MATTHEW SCHAEFFER, <br><br> v. <br><br> MAYOR AND CITY COUNCIL OF BALTIMORE. | Civil Action No. CCB-22-1539 |

# MEMORANDUM

Pro se plaintiff Matthew Schaeffer alleges that the Baltimore City Fire Department ("BCFD") discriminated against him on the basis of his disability when it revoked his conditional offer of employment for the position of Emergency Medical Technician/Firefighter ("EMT/FF") after he failed to complete a required medical examination, and then retaliated against him for filing an EEOC charge by rejecting his subsequent application for the same position. Now pending before the court is the defendant Mayor and City Council of Baltimore's ("the City") motion for summary judgment. Mot., ECF 35-1. Mr. Schaeffer opposed the motion, and the City replied. The motion is ripe for resolution and no oral argument is necessary. *See* Local Rule 105.6. For the following reasons, the City's motion will be granted.

# BACKGROUND

Matthew Schaeffer is employed by BCFD as an Emergency Medical Technician ("EMT"). Compl. ¶ 2, ECF 1.[1] BCFD hired him in 2015 after he completed the application process, which included a "basic written examination, an oral interview, a physical skills test, a criminal background check and a comprehensive medical exam performed by the Baltimore City Public

---

[1] In this background section, citations to the complaint refer to allegations that the City has admitted are true unless otherwise noted.

Safety Infirmary ('PSI'), a contracted clinic administered by Mercy Business Services." *Id.* ¶ 11. According to Mr. Schaeffer, he disclosed his disabilities, bipolar disorder and depression, to PSI during his 2015 medical exam. *Id.* ¶ 12.

## I. First EMT/FF Application

In June 2018, Mr. Schaeffer applied for the EMT/FF position with BCFD because, according to Mr. Schaeffer, it "awards a higher salary, a less strenuous job load, better working conditions, and considerably further promotional opportunities." Opp'n to Mot. at 2, ECF 37 ("Opp'n"); *see* Compl. ¶ 13 & n.1. The position announcement noted that candidates would have to pass "a job-related physical examination administered by the City," "drug and alcohol testing," and a criminal background check. Mot. Ex. 1 at 2, ECF 35-6. The selection process included "a multiple choice test, a physical ability test; and a structured interview." *Id.* at 3.[2]

Mr. Schaeffer describes the move from EMT to EMT/FF as a "promotion." Compl. ¶ 13 & n.1; Opp'n at 2. The City disagrees, and explains that the two are both entry-level positions with different promotional pathways: the EMT position is within BCFD's "EMS" Department, and the EMT/FF position is within the "Suppression" Department. Jamarr Rayne Aff. ¶¶ 3-4 & n.1, ECF 35-3 ("Rayne Aff."). Mr. Schaeffer acknowledges that the positions are separate entry-level positions but contends that they have "nearly identical" hiring processes and that "[p]ractically,

---

[2] Mr. Schaeffer was on medical leave from BCFD when he submitted his EMT/FF application. Compl. ¶ 13. When he returned for work, and while his application was pending, he was subject to a "Fit For Duty" evaluation, which included many of the same requirements as the EMT/FF application, including a physical test, background check, and PSI medical clearance. *Id.* Mr. Schaeffer alleges that PSI expressed concerns that his absence was related to his disability and that, in response, he gave PSI "an open ended, written waiver allowing them to contact the plaintiffs [sic] primary care physician and therapist and obtain written records at any time without specific approval." *Id.* Mr. Schaeffer also met with a BCFD psychiatrist around the same time. *Id.* ¶ 14. Mr. Schaeffer was subsequently returned to duty. *Id.* Mr. Schaeffer offers no evidence to corroborate the existence of an "open ended . . . waiver" to access his medical history.

the only difference is that as an entry EMT [sic] is assigned to an ambulance, an EMT/FF is assigned to a fire engine." Compl. ¶ 13 n.1. Mr. Schaeffer further admits that "BCFD does not recognize members already employed as EMT's [sic] or Paramedics as already-hired employees and to be promoted they must go through the full hiring process again." *Id.* Mr. Schaeffer seems to view the re-hiring process as unnecessary, and notes that it is unique to a change from EMT to EMT/FF. *Id.* The City views the fact that the positions are entry-level roles in different departments as dispositive: each has its own promotional pathway specific to its department, neither of which includes a switch between the departments' entry-level positions, and the change is therefore not a promotion but rather a new hire. Rayne Aff. ¶ 4 n.1.

In any event, the EMT/FF role is a civil service position governed by the Baltimore City Department of Human Resources Civil Service rules. Mot. at 2; *see* Opp'n at 2 (agreeing that the Civil Service rules govern hiring for the position). The parties agree that the Civil Service rules require completion of the full new-hire process for all EMT/FF candidates, but Mr. Schaeffer criticizes the requirement as a "nebulous administrative matter," and attacks the distinction between the departments as the product of "convoluted Civil Service Rules." Mot. at 2; Opp'n at 2. He explains that, in practice, "[p]ersonnel from the Suppression branch are routinely assigned to EMS units." Opp'n at 2.

BCFD extended Mr. Schaeffer a conditional offer of employment in the EMT/FF position on September 21, 2018. Mot. Ex. 4, ECF 35-9. The offer was conditioned "on the results of medical exam [sic] and drug/alcohol screening," which was scheduled at PSI on September 24, 2018. *Id.* Mr. Schaeffer reported for his exam and PSI "deferred [a conclusion] pending further examination." Mot. Ex. 5, ECF 35-10. PSI gave Mr. Shaeffer a "Request for Information" form requiring that he submit a note from his psychiatrist about his "mental health to include diagnosis,

3

treatment prescribed and any limitations to physical to work [sic] as Baltimore City Firefighter," along with "medication compliance," within ten days. Mot. Ex. 6, ECF 35-11. The request noted that "[i]f the documentation is not received within 10 business days, the department will be notified that you have not provided information needed to complete the evaluation[.] . . . Failure to respond to those requirement(s) will cause your application process with the Baltimore City Fire Department to be suspended and/or closed." *Id.* Mr. Schaeffer acknowledged receipt of the request for information with his signature. *Id.* PSI then notified BCFD that Mr. Schaeffer's medical examination result had been deferred. Lisa Conic Aff. ¶ 13, ECF 35-4 ("Conic Aff.").

Mr. Schaeffer followed up by submitting a "verification of treatment" letter from his psychiatrist which described his diagnoses and medications but did not comment on how his condition would impact his ability to serve as a firefighter nor his medication compliance. Mot. Ex. 12, ECF 35-17. According to the City, Mr. Schaeffer did not submit this letter until January 23, 2019, and the letter bears two signatures reflecting that date. *Id.*; *see* Conic Aff. ¶¶ 15-16; Natalie Hall Aff. ¶¶ 8-10, ECF 35-5 ("Hall Aff."); Conic Aff. at 6. Mr. Schaeffer apparently contends that he provided the letter to PSI somewhat sooner following his September 24 examination, Compl. ¶ 15, but offers no evidence to support his point (although the treatment verification letter was signed by Mr. Schaeffer's physician on September 27, 2018, Mot. Ex. 12).[3]

---

[3] On December 31, 2018, after Mr. Schaeffer suggests he submitted the verification letter but before the City argues he did so, BCFD issued another letter to Mr. Schaeffer, which he describes as a "written notice of qualification for promotion to EMT/FF," Compl. ¶ 16, and the City describes as another "conditional offer of employment," Answer ¶ 16, ECF 20. The December 31 letter is not in the record.

Additionally, Mr. Schaeffer contends that his chart was reopened after the December 31 letter but before January 23 at the request of BCFD human resources. Compl. ¶ 20. This claim is corroborated by a notation on Mr. Schaeffer's physical examination form that his "chart [was] reopened 01/11/2019 per Julie Torres." Conic Aff. at 6. There is no evidence explaining why Mr. Schaeffer's chart was reopened.

PSI called Mr. Schaeffer on January 24, 2019, after he submitted the verification letter, and left a voicemail asking him to return the call. Conic Aff. ¶ 18; *id.* at 6. Because the verification letter did not include all the requested information, PSI marked Mr. Schaeffer's examination result "info not received" on February 1, 2019, and sent that determination to BCFD. Mot. Ex. 5; Conic Aff. ¶¶ 19-20. Mr. Schaeffer got in touch with PSI on February 8, 2019, Compl. ¶ 17, and PSI informed him that he needed to provide a fully compliant "'medical clearance' from his psychiatrist by Monday, February 10th," *id.* Mr. Schaffer claims that he noted he had given PSI an open waiver to access his medical history and PSI responded that he needed to procure the clearance. *Id.* The timeline for approval was apparently cramped at this point, as BCFD published a General Order on February 14, 2019, listing transfers to the fire academy. *Id.* ¶ 18; Mot. Ex. 13, ECF 35-18. Mr. Schaeffer did not submit medical clearance by February 10, and, accordingly, BCFD withdrew his conditional offer of employment on February 12, 2019, and omitted his name from the February 14 General Order. Mot. Ex. 7, ECF 35-12; Mot. Ex. 13.

## II. EEOC Complaint

Mr. Schaeffer filed a complaint with the EEOC "alleging that [] the Departments [sic] refusal to promote the plaintiff was due to an illegal, unnecessary, and unwarranted medical examination; and further, the Department had no claim that the plaintiff's disability was adversely effecting [sic] his job performance." Compl. ¶ 21. According to Mr. Schaeffer, on April 29, 2020, the EEOC determined that BCFD violated the Americans with Disabilities Act by requiring him to submit to the medical examination and denying him "the promotion" because he failed to do so. *Id.* ¶ 24. The City agrees that the EEOC issued a determination on April 29, 2020, but denies Mr. Schaeffer's interpretation and states that "the [Letter of Determination] document speaks for itself." Answer ¶ 24. The April 29, 2020, EEOC letter is not in the record.

5

The parties also agree that Mr. Schaeffer's EEOC complaint was forwarded to the Department of Justice ("DOJ") for review, which Mr. Schaeffer alleges was because BCFD "has a history of violations of the ADA." Compl. ¶ 25; Answer ¶ 25. According to Mr. Schaeffer, the DOJ investigated the matter and interviewed him several times in early 2022. Compl. ¶ 29. Ultimately, the DOJ declined to bring a case and issued a right-to-sue letter on March 29, 2022. *Id.* ¶ 31; Right-to-Sue Letter, ECF 1-2.

### III. Second EMT/FF Application

While his EEOC complaint was pending, Mr. Schaeffer re-applied for the EMT/FF position in a subsequent hiring round. Compl. ¶ 26. According to Mr. Schaeffer, he did so at the suggestion of BCFD. *Id.* Mr. Schaeffer completed the steps of the application process in late 2021 and early 2022. *Id.* ¶ 28. At the oral interview stage, in which three interviewers score candidates from 1-5 on their "Verbal Communication Skills," "Interpersonal Skills," and "Decision-Making Skills," Mr. Schaeffer received scores of 3/3/3, 3/2/3, and 3/3/2, below the passing average overall score of three. Mot. Ex. 9, ECF 35-14. On February 9, 2022, BCFD notified Mr. Schaeffer that he had failed the oral interview requirement and would therefore not be hired as an EMT/FF. Compl. ¶ 30; Answer ¶ 30; Mot. Ex. 10 at 4, ECF 35-15. Mr. Schaeffer suggests that this denial was retaliation for his EEOC complaint, noting that he had passed the oral interview requirement several times before, and that, unlike his prior interview panels which had been exclusively comprised of Baltimore citizens, his most recent panel had included "a uniformed member of the Department." Compl. ¶ 28.

### IV. Procedural History

Mr. Schaeffer filed his complaint on June 22, 2022. Compl. After some difficulty effectuating service of process, the City answered Mr. Schaeffer's complaint, Answer, and the

6

parties began discovery. Pursuant to the scheduling order, discovery closed on August 11, 2023, and dispositive motions were due by September 11, 2023. Scheduling Order, ECF 21. The City timely filed a motion for summary judgment on September 8, Mot., which Mr. Schaeffer opposed, Opp'n. Mr. Schaeffer then belatedly filed a motion to compel, Mot. to Compel, ECF 40, which Magistrate Judge Coulson denied as untimely. Mem. & Order, ECF 42.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007). Generally, "when there is a close question and 'reasonable minds could differ' when weighing the facts against the law, then summary judgment is inappropriate." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 208 (4th Cir. 2014) (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989)). But the nonmovant "must still provide evidence sufficient to create an issue for trial. Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other

party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) (citing *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## ANALYSIS

Mr. Schaeffer brings disability discrimination and retaliation claims for violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117, Maryland State Government Article § 20-602 ("Maryland Fair Employment Practices Act" or "MFEPA"),[4] and Article 4 of the Baltimore City Code. The MFEPA "contains functionally identical prohibitions and is evaluated under the same framework as the [ADA]." *Campbell v. Becton, Dickinson & Co.*, No. 22-cv-3043-ELH, 2024 WL 1299354, at *24 (D. Md. Mar. 27, 2024) (quoting *Destiny Charity Rose Teel v. Md. Nat. Treatment Sols., LLC*, No. 23-cv-1694-RDB, 2024 WL 1075421, at *4 (D. Md. Mar. 12, 2024)).[5] Article 4 of the Baltimore City Code provides no independent cause of action and cannot be the basis of a civil claim. *Abdelnaby v. Durham D&M LLC*, No. 14-cv-3905-GLR, 2015 WL 3756012, at *2 (D. Md. June 15, 2015) (citing *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 782 n.7 (D. Md. 2010)). Accordingly, the court will conduct a single analysis of Mr. Schaeffer's claims under the ADA's standards.

**I. Disability Discrimination**

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question,

---

[4] Section 20-602 sets forth Maryland's general policy against discrimination and does not establish a cause of action. Nevertheless, Maryland does permit civil actions to recover for unlawful employment practices, Md. Code Ann., State Gov't § 20-1013; *see id.* § 20-606 (describing unlawful employment practices), and the court interprets Mr. Schaeffer's complaint to bring his state law claim under that provision, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se pleadings should be liberally construed).
[5] Unpublished opinions are cited for the soundness of their reasoning rather than any precedential value.

and (3) that her employer discharged her (or took other adverse employment action) because of her disability.'" *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015) (quoting *EEOC v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)). Adverse employment actions can include a failure to promote, *Smith v. Lowes Cos.*, 638 F. Supp. 3d 572, 576-77 (W.D.N.C. 2022) (citing *Heiko v. Colombo Savings Bank, FSB*, 434 F.3d 249, 259 (4th Cir. 2006)), or a failure to hire, *Pitts v. Md. Dep't of Transp.*, No. 23-cv-983-JMC, 2023 WL 8806615, at *4 (D. Md. Dec. 20, 2023) (quoting *Aletum v. Grazzini*, No. 20-cv-1793-DKC, 2021 WL 147030, at *4 (D. Md. Jan. 15, 2021)); *see also* 42 U.S.C. § 12112(a) (prohibiting discrimination "in regard to . . . the hiring [or] advancement . . . of employees"). "Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework." *Jacobs*, 780 F.3d at 572 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 & n.3 (2003)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Mr. Shaeffer offers no direct or indirect evidence of discrimination. *See Israelitt v. Enterprise Servs. LLC*, No. 18-cv-1454-SAG, 2021 WL 795150, at *4 (D. Md. Mar. 2, 2021) (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)).

Under *McDonnell Douglas*, the plaintiff must first "produce evidence that establishes a prima facie case of discrimination." *Burnett v. BJ's Wholesale Club*, __ F. Supp. 3d __, 2024 WL 1014074, at *5 (D. Md. 2024) (citing *Jacobs*, 780 F.3d at 572). If a prima facie case is made out, "the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for taking the adverse employment action." *Id.* If the defendant establishes "a legitimate, non-discriminatory reason for the [adverse action], the burden shifts back to the plaintiff to show that the defendant's asserted justifications are pretextual" either by direct or circumstantial evidence. *Id.*

9

The City contends that Mr. Schaeffer has failed to make out a prima facie case of disability discrimination. Everyone agrees that Mr. Schaeffer has a disability. The parties dispute whether Mr. Schaeffer's failure to complete the comprehensive medical examination rendered him "unqualified" for the position. In the court's view, the better question is whether Mr. Schaeffer would have likely passed the medical examination had he completed it, and therefore was "qualified" to perform the tasks of the position. *See EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851-52 (4th Cir. 2001) (asking whether the plaintiff was capable of performing the required tasks of the position). Although he offers no corroborating evidence, the court will assume that Mr. Schaeffer would have passed the medical examination and was otherwise qualified for the EMT/FF position, given that he had passed a comparable medical examination a few years before, Compl. ¶ 12; *see* Answer ¶ 12 (admitting hiring), and a second medical clearance for a return to duty more or less contemporaneously with his hiring process for the EMT/FF position, Compl. ¶ 14; Answer ¶ 14 (admitting return to duty). Accordingly, Mr. Schaeffer has shown that he was qualified for the EMT/FF position.

Mr. Schaeffer's prima facie case nevertheless fails at the causation element. To meet his burden, Mr. Schaeffer "must produce evidence from which a jury could reasonably infer that the defendant knew of his disability and took an adverse action because of it." *Burnett*, 2024 WL 1014074, at *5-6 (citing *Jacobs*, 780 F.3d at 575). There is simply nothing in the record to show that the BCFD officials in charge of hiring for the EMT/FF position were aware of Mr. Shaeffer's disability. Mr. Schaeffer's medical records were held by PSI, Rayne Aff. ¶¶ 15-17; Conic Aff. ¶¶ 21-23, and his detailed examination results were never provided to BCFD, *id.* PSI informed BCFD that Mr. Schaeffer's medical examination results were deferred pending additional information, Conic Aff. ¶ 13, but there is no evidence that PSI described why it was requesting

more information. Moreover, Mr. Schaeffer's ultimate denial was not due to a medical determination that he was unfit to perform the EMT/FF role, but rather followed from his technical failure to fully comply with PSI's request for additional information.

Mr. Schaeffer implies the existence of a conspiracy that would suggest BCFD's knowledge of his disability, alleging that "following the completion of the medical examination with PSI in September, . . . a member of BCFD Human Resources had contacted PSI and requested that PSI 'reopen [the plaintiffs] chart.'" Compl. ¶ 20. And his chart does include a note that it was "reopened 01/11/2019 per Julie Torres." Conic Aff. at 6. But there is absolutely no evidence from which any knowledge or discriminatory motivation for reopening can be inferred. It is just as (if not more) likely that, one month out from final approval day, BCFD's Human Resources department noticed that Mr. Schaeffer's medical examination result was still on "deferred" status and brought the issue to PSI's attention to get final resolution. At bottom, speculation without evidence is insufficient to defeat summary judgment. *Francis*, 452 F.3d at 308. Mr. Schaeffer has not introduced proof to establish a prima facie case of disability discrimination, and summary judgment is therefore warranted.[6] But even if he had shown a prima facie case, Mr. Schaeffer's claims would fail.

The main dispute in this case is whether BCFD wrongfully denied Mr. Schaeffer's application for the EMT/FF position when he did not complete the required medical examination. The City argues, in the context of the second *McDonnell Douglas* step, that passage of the medical examination was a valid condition of employment, and that Mr. Schaeffer's failure to satisfy the

---

[6] In his opposition, Mr. Schaeffer conclusorily asserts that he has made out a prima facie case because the EEOC found "that the defendant did deny the plaintiff a promotion because of a qualified disability." Opp'n at 1. Mr. Schaeffer offers no evidence to prove the EEOC's alleged finding of discrimination, and his right-to-sue letter states that it does not represent "a judgment as to whether or not your charge is meritorious." Right-to-Sue Letter. Mr. Schaeffer's statements about the EEOC do not make out a prima facie case.

11

requirement was a legitimate, nondiscriminatory reason for refusing to hire him. Mot. at 9-10. Mr. Schaeffer appears to respond by arguing that, because he was already employed by BCFD and had passed medical examinations before, an additional medical examination for his "promotion" to EMT/FF was unnecessary and conditioning employment on its completion was discriminatory.

The ADA specifically permits "a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and [an employer] may condition an offer of employment on the results of such examination, if" "all entering employees are subjected to such an examination regardless of disability." 42 U.S.C. §§ 12112(d)(3), 12112(d)(3)(A). Any medical information collected in the exam must be maintained separately and confidentially from the employee's general file, and only limited information can be provided to supervisors and managers. *Id.* § 12112(d)(3)(B). Furthermore, an employer may require an employee to undergo a medical examination when it is "job-related and consistent with business necessity." *Id.* § 12112(d)(4)(A). "Whether a medical inquiry is job-related and consistent with business necessity 'is an objective inquiry,'" and "[t]he standard is met if the employer reasonably believes that an employee's medical condition impairs his 'ability to perform the essential functions of the job' or 'the employee poses a direct threat to himself or others.'" *Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 339 (4th Cir. 2022) (quoting *Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019)). It is the employer's burden to "'show that the asserted "business necessity" is vital to the business' and that 'the request is no broader or more intrusive than necessary.'" *Id.* (quoting *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 97-98 (2d Cir. 2003)).

Although there is limited authority addressing which of these standards applies when an offer of promotion to an existing employee is conditioned on the results of a medical examination,

the courts to consider the issue have generally relied on the post-offer, pre-commencement test of Section 12112(d)(3). In *Henderson v. Borough of Baldwin*, for example, Judge Bissoon of the Western District of Pennsylvania applied the ADA's prohibition on pre-offer examinations, rather than the "job-related and consistent with business necessity" test, to hold that the plaintiff had stated an ADA claim when he alleged that "he was subjected to a medical examination *prior to being given a conditional offer of promotion* to the position of lieutenant." No. 15-cv-1011-CB, 2016 WL 5106945, at *3 (W.D. Pa. Sept. 20, 2016). And in *Karraker v. Rent-A-Center, Inc.*, the Seventh Circuit accepted the parties' agreement that, "although the Karrakers were already employed by [Rent-A-Center], the tests here were administered 'pre-employment' for ADA purposes because they were required for those seeking new positions within RAC." 411 F.3d 831, 835 (7th Cir. 2005). The relevant EEOC guidelines, which "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance," *Coffey*, 23 F.4th at 339 (internal citations omitted), support this conclusion. The guidelines advise that, when considering "an employee who applies for a new (i.e., different) job with the same employer," the "employer should treat an employee . . . as an applicant for the new job." U.S. Equal Emp. Opportunity Comm'n, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA), 2000 WL 33407181, at *9 (2000) (emphasis omitted). Therefore, "[a]fter the employer extends an offer for the new position, it may ask the individual disability-related questions or require a medical examination as long as it does so for all entering employees in the same job category." *Id.* Accordingly, the court will apply the Section 12112(d)(3) standard to determine the propriety of the medical examination requirement in Mr. Schaeffer's case.

Mr. Schaeffer's failure to complete the required medical examination is a legitimate reason for denying him the EMT/FF position. The City's position posting noted that "[e]ligible candidates must pass a job-related physical examination administered by the City." Mot. Ex. 1 at 2. And to the extent that requirement was ambiguous given the position's additional requirement that candidates pass "a physical ability test," *see id.* at 3, Mr. Schaeffer's conditional offer of employment made clear that a medical examination was required, Mot. Ex. 4 ; *see also* Reply Ex. 15b at 14, ECF 39-2 (listing requirements of "physical agility test" and "physical exam"). Mr. Schaeffer does not contend that the medical examination was administered only to him. 42 U.S.C. §§ 12112(d)(3), 12112(d)(3)(A). Mr. Schaeffer agrees that the EMT/FF position involved different duties than his current position, and he does not suggest that the medical examination focused on subjects that were irrelevant to the position. *See* Opp'n at 2. And no one contends that candidates for the position should not have to undergo medical examinations at all. Accordingly, there is no basis to conclude that BCFD was wrong to require Mr. Schaeffer to undergo a medical examination for the EMT/FF position, even if Mr. Schaeffer had recently passed similar examinations for a similar position.

Mr. Schaeffer's briefing suggests that he believes he did complete the medical examination as required. It is undisputed that Mr. Schaeffer reported to PSI to undergo his medical examination on September 24, 2018, as directed by his conditional offer of employment. *See* Mot. Ex. 4; Mot. Ex. 5. But it is also undisputed that Mr. Schaeffer's examination result was "deferred pending further examination," Mot. Ex. 5, and Mr. Schaeffer acknowledged that he was required to submit additional information, Mot. Ex. 6. Mr. Schaffer's "verification of treatment" letter, whether timely submitted or not, did not comment on how his condition would impact his ability to serve as a firefighter or his medication compliance, and therefore did not fully comply with PSI's request

for information. Mot. Ex. 12; *see Coffey*, 23 F.4th at 340-41 (no genuine dispute of fact when required medical information was not submitted and employer informed plaintiff of the inadequacy). Moreover, the existence of an "open waiver" allowing PSI to access Mr. Schaeffer's records, provided at a different time and under difference circumstances, does not relieve him of his obligation to meet the hiring requirements of the position, including complying with PSI's requests for information. *Coffey*, 23 F.4th at 341 (employer is not required to "assist[] [the plaintiff] with compliance or [to] sp[eak] directly to his doctor").

Mr. Schaeffer further suggests, if his timeline of events is true, that he believed he had met the medical examination requirement until PSI contacted him at the last minute asking for additional information. Compl. ¶ 15-17. But even if the court draws every possible inference from the evidence in Mr. Schaeffer's favor, the facts clearly establish that his medical examination was deferred pending additional information that he failed to adequately submit, and any delay in notifying him that his response was unsatisfactory must be attributed to PSI, not BCFD. Mr. Schaeffer's failure to meet the medical examination requirement was a legitimate and nondiscriminatory basis for BCFD to revoke his conditional offer of employment. Thus, the City has carried its burden at *McDonnell Douglas* step two.

Mr. Schaeffer fails to adduce any evidence to show that BCFD's reason for revoking his conditional offer of employment was pretextual. Mr. Schaeffer's allegations imply his belief that he had satisfied the medical examination requirement and was on track to be hired until BCFD's Human Resources department intervened and asked PSI to request more information from him with only days to provide it. Compl. ¶ 20. But there is no evidence in the record to suggest any reason for BCFD's request that PSI reopen Mr. Schaeffer's chart, let alone that BCFD directed PSI to request additional information or that the request was discriminatorily motivated. Instead,

15

the record evidence shows that PSI did not ask Mr. Schaeffer for further additional information until after he submitted an incomplete response to the initial request for information. Conic Aff. ¶¶ 15-18. Mr. Schaffer cannot rely on speculation to show pretext, *Burnett*, 2024 WL 1014074, at *6 (quoting *Warfaa v. Ali*, 1 F.4th 289, 296 (4th Cir. 2021)), and he therefore fails at *McDonnell Douglas* step three.

For all of these reasons, Mr. Schaeffer has not established a genuine dispute of material fact as to his discrimination claim and the City is entitled to judgment, so the City's motion for summary judgment on that claim will be granted.

## II. Retaliation

Mr. Schaeffer also brings a claim for retaliation based on BCFD's rejection of his second application for the EMT/FF position. A retaliation plaintiff "must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her." *Jacobs*, 780 F.3d at 577 (citing *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001)). Like with discrimination claims, "a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a [*McDonnell Douglas*] burden-shifting method." *Id.*

There is no dispute that Mr. Schaeffer's EEOC complaint was protected activity, and that his rejection was an adverse employment action. But again, Mr. Schaeffer fails to provide evidence of causation or pretext in the face of BCFD's proffered legitimate reason for denying his application. Put simply, nothing other than speculation connects Mr. Schaeffer's EEOC complaint to his subsequent denial. Mr. Schaeffer filed his EEOC complaint sometime in late 2019 or early 2020. *See* Compl. ¶ 24. BCFD revoked his second conditional offer of employment as an EMT/FF two years later, on February 9, 2022. *Id.* ¶ 30. Although temporal proximity between protected activity and an adverse action can serve as proof of causation, *Smith v. CSRA*, 12 F.4th 396, 417

16

(4th Cir. 2021) (quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021)), the proximity must be "very close," and a "years-long gap . . . would tend to prove the opposite," *Roberts*, 998 F.3d at 126-27 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). And Mr. Schaeffer offers no evidence of "intervening events [to] bridge [this] prohibitively long temporal gap." *Barbour v. Garland*, __ F.4th __, 2024 WL 3092297, at *11 (4th Cir. 2024) (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)). In contrast, the City explains that BCFD rejected Mr. Schaeffer because he failed the oral interview portion of his second EMT/FF application. *See* Mot. Ex. 9 (oral interview score sheet). Mr. Schaeffer merely speculates that this was a pretextual excuse because one of his interviewers was a BCFD employee. Compl. ¶ 28. As explained, Mr. Schaeffer's speculation is insufficient, and, in any event, neither establishes that his BCFD interviewer knew about his EEOC complaint nor explains why he received below-passing scores from *two* interviewers.[7] Mr. Schaeffer's evidence fails to make out a retaliation claim, and the City's motion for summary judgment on that claim will therefore be granted.

### III. Additional Discovery

Mr. Schaeffer offers no legal or counter-factual argument in opposition to the City's motion. Instead, he contends that discovery was insufficient in several ways and asks for additional discovery to prove his claims. *See* Opp'n. The City contends that discovery is closed and was satisfactory.

---

[7] The court additionally notes that, on Mr. Schaeffer's own allegations, BCFD "unexpectedly" invited him to reapply for the position. Compl. ¶ 26. Although not beyond the realm of possibility, it is extremely unlikely that an employer would invite an employee to request some benefit just so that it can reject his request in retaliation for protected activity.

A nonmovant may oppose a motion for summary judgment by averring that he has not had an opportunity for reasonable discovery and that more time is therefore needed. *Pevia v. Hogan*, 443 F. Supp. 3d 612, 626 (D. Md. 2020) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) and Fed. R. Civ. P. 56(d)). To properly raise the issue, a party must generally submit an affidavit pursuant to Rule 56(d) explaining the reasons that "it cannot present facts essential to justify its opposition[] without needed discovery." *Id.* But an affidavit is not always required, and failure to submit a formal affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" such that his objections "served as the functional equivalent of an affidavit." *Id.* (quoting *Harrods*, 302 F.3d at 244-45). It is especially appropriate to excuse the affidavit requirement where, as here, the nonmovant is pro se. *Id.* (quoting *Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016)).

To demonstrate that discovery is necessary under Rule 56(d), a party must "set out the reasons for discovery . . . and it cannot withstand a motion for summary judgment by merely asserting in its brief that discovery [is] necessary." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (citing *Hayes v. N. State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993)); *see Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015) ("[A] Rule 56(d) affidavit [generally] outlines the need for discovery and what additional facts litigants hope to uncover through discovery to properly defeat summary judgment."). The need for additional discovery must be "particularly specifie[d] [and] legitimate," and a requesting party must identify "which aspects of discovery require[] more time to complete." *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006) (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)). Moreover, "[a] nonmoving party's Rule 56(d) request for additional

discovery is properly denied 'where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Pevia*, 443 F. Supp. 3d at 627 (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 342 (D. Md. 2011).

Notably, a party seeking additional discovery must show that he "has not had the *opportunity* to discover information that is essential to his opposition." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483-84 (4th Cir. 2014) (quoting *Harrods*, 302 F.3d at 244) (emphasis added). Accordingly, "nonmovants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to." *Id.* at 484 (citing *Harrods*, 302 F.3d at 246). When a party's own delay results in a failure to gather evidence, Rule 56(d) provides no shelter from a motion for summary judgment. *See id.*

Construed liberally, as it must be, *Erickson*, 551 U.S. at 94, Mr. Schaeffer's opposition to the City's motion for summary judgment is essentially a Rule 56(d) affidavit. Mr. Schaeffer disputes the veracity of several of the City's assertions and lists areas where he contends the City failed to respond to "verbal and written requests from the plaintiff to produce documents that are known to exist." Opp'n at 3-4. Accordingly, the court will excuse the formal affidavit requirement.

Accepted as a Rule 56(d) affidavit, Mr. Schaeffer's filing nevertheless fails to shield him from summary judgment for several reasons. First, and most simply, Mr. Schaeffer fails to offer any legal argument to explain why the additional discovery he seeks would defeat summary judgment. His opposition merely outlines the areas where he believes discovery has been unsatisfactory without explaining why additional discovery would help him prove an element of his claim. *See Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011) (per curiam).

19

Second, Mr. Schaeffer's inability to gain the discovery he seeks is attributable to his own delay. Unlike the vast majority of cases in which Rule 56(d) is invoked to contest a motion for summary judgment filed *before* discovery, *see, e.g.*, *McCray*, 741 F.3d at 482; *Putney*, 656 F. App'x at 636; *Dave & Buster's*, 616 F. App'x at 560-61, the City filed its motion for summary judgment after the close of discovery and fully in compliance with the scheduling order, *see* Scheduling Order (setting August 11, 2023, discovery deadline and September 11, 2023, dispositive motions deadline). Mr. Schaeffer had ample opportunity during the four months of discovery to contest the City's discovery responses through negotiation or a timely motion to compel, if necessary. Instead, he waited until after the City filed its motion for summary judgment to note that a motion to compel would be "*forthcoming*," *see* Opp'n at 2, 4 (filed September 20, 2023) (emphasis added), and then waited another forty-eight days to file that motion, *see* Mot. to Compel (filed November 7, 2023). Magistrate Judge Coulson denied Mr. Schaeffer's motion to compel because it came well after the close of discovery and "roughly seventy-one (71) days after" the City's latest discovery response. Mem. & Order at 3. Mr. Schaeffer was afforded a more-than-satisfactory opportunity to discover essential evidence, which is all that he is due. *McCray*, 741 F.3d at 483-84. Mr. Schaeffer's request for additional discovery will therefore be denied.

## CONCLUSION

For the foregoing reasons, the City's motion for summary judgment will be granted. A separate Order follows.

   6/26/2024     
Date

   /s/     
Catherine C. Blake  
United States District Judge